**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NIAGARA TRANSFORMER CORP.,<br><br>Defendant. | Civil Action No. 1:20-cv-04041 (ALC)<br><br>**ADMIRAL INSURANCE COMPANY'S RULE 56 AND LOCAL CIVIL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Pursuant to the Federal Rules of Civil Procedure and Local Civil Rule 56.1, Plaintiff Admiral Insurance Company ("Admiral"), respectfully submits the following statement of undisputed material facts in support of its motion for summary judgment.

**GENERAL BACKGROUND**

1. Admiral is Delaware corporation with its principal place of business in Scottsdale, Arizona. See Legal and Licensing Information Chart, attached as Exhibit B to the accompanying Declaration of Justin N. Kinney, Esq. in Support of Plaintiff's Motion for Summary Judgment ("Kinney Decl.")

Niagara's Response to Paragraph 1:

2. At the time of the issuance of Admiral policy number 6CG1839 (the "Admiral Policy") to Niagara Transformer Corp. ("Niagara"), Admiral was a Texas stock company. See Admiral Policy Declarations, attached within Exhibit O at page ADM 000002 to the accompanying Declaration of John M. Tereniak in Support of Plaintiff's Motion for Summary Judgment ("Tereniak Decl.").

Niagara's Response to Paragraph 2:

3. Niagara has been a New York domestic business corporation since at least 1958. See Entity Information printout from the NYS Department of State, Kinney Decl., Exhibit C.

Niagara's Response to Paragraph 3:

4. Niagara's principal place of business is located at 1755 Dale Road, Buffalo, New York. See NYS Department of State Entity Information printout, Kinney Decl., Exhibit C.

Niagara's Response to Paragraph 4:

5. At the time of the issuance of the Admiral Policy, Niagara's principal place of business was located at 1747 Dale Road, Cheektowaga, New York. See Admiral Policy Declarations, Tereniak Decl., Exhibit O at ADM 000002; Products Liability Proposal, Tereniak Decl., Exhibit O at ADM 000020.

Niagara's Response to Paragraph 5:

6. At the time of the issuance of the Admiral Policy, Niagara manufactured electrical equipment, specifically transformers, at the 1747 Dale Road location, and at a location at 1600 Seneca Street, Buffalo, New York. See Products Liability Proposal, Tereniak Decl., Exhibit O at ADM 000020.

Niagara's Response to Paragraph 6:

**THE ADMIRAL POLICY**

7. Admiral issued the Admiral Policy to Niagara as the Named Insured for the period July 30, 1976, to July 30, 1977. See Tereniak Decl. ¶13 & Exhibit O at ADM 00002-00006; 00009.

Niagara's Response to Paragraph 7:

8. The Admiral Policy was underwritten on behalf of Admiral by Jersey/International, Inc., located at 56 Haddon Avenue in Haddonfield, New Jersey. See Admiral Policy Folder, Tereniak Decl., Exhibit O & Exhibit O at ADM 000021.

Niagara's Response to Paragraph 8:

9. The wholesale broker, and policy producer, was Wohlreich & Anderson, Ltd., which was located at 55 John Street, New York, New York. See Admiral Policy Declarations, Tereniak Decl., Exhibit O at ADM 000002.

Niagara's Response to Paragraph 9:

10. Niagara's retail insurance broker for the Admiral Policy was Lawley Service, Inc., located at 1470 Statler Hilton Hotel, Buffalo, New York. See Products Liability Proposal, Tereniak Decl., Exhibit O at ADM 000017-000020; Risk Submission – Supplemental Information, Exhibit O at ADM 000023; November 1, 1977, letter from Niagara to Lawley Service, Inc., Exhibit O at ADM 000045.

Niagara's Response to Paragraph 10:

11. The Admiral Policy provides completed operations and products liability insurance with limits of $300,000.00 each occurrence and in the aggregate for bodily injury liability and $50,000 each occurrence and in the aggregate for property damage liability, subject to a $2,500 per claim deductible for both coverages combined. Admiral Declarations, Tereniak Decl., Exhibit O at ADM 000002; Endorsement No. 1, Exhibit O at ADM 000005.

Niagara's Response to Paragraph 11:

12. The Schedule of General Liability Hazards in the Declarations of the Admiral Policy identifies a single products classification for "Electrical Equipment (mfg.)". Admiral Policy Additional Declarations, Tereniak Decl., Exhibit O at ADM 000003.

Niagara's Response to Paragraph 12:

13. The Insuring Agreement of the Admiral Policy provides as follows:

> **I. COVERAGE A – BODILY INJURY LIABILITY**
> **COVERAGE B – PROPERTY DAMAGE LIABILITY**
>
> ADMIRAL will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:
>
> A. bodily injury or B. property damage
>
> to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the products hazard, and ADMIRAL shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but ADMIRAL shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of ADMIRAL's liability has been exhausted by payment of judgments or settlements.

[Completed Operations and Products Liability Coverage Part, Tereniak Decl., Exhibit O at ADM 000003-000004; Tereniak Decl. ¶¶20-21 & Exhibit P.]

Niagara's Response to Paragraph 13:

14. The Admiral Policy includes the following Notice provision:

**4. Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to ADMIRAL'S authorized representative as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to ADMIRAL's authorized representative every demand, notice, summons or other process received by him or his representative.

(c) The Insured shall cooperate with ADMIRAL and, upon ADMIRAL's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of injury or damage with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

[Tereniak Decl. ¶¶22-26 & Exhs. Q at 3; R at 3.]

Niagara's Response to Paragraph 14:

**NIAGARA'S COVERAGE CLAIM AND ADMIRAL'S RESPONSE**

15. Niagara presented its claim for coverage to Admiral more than three and half years after Monsanto asserted the claims and a year after Monsanto's last tender, by letter dated March 11, 2020, which was received by Admiral on March 23, 2020. Tereniak Decl. ¶5 & Exhibit A.

Niagara's Response to Paragraph 15:

16. In its notice letter, Niagara advised that it had been "served with certain demands for defense and indemnification by Monsanto Company, Pharmacia LLC, f/k/a Monsanto, and Solutia, Inc. (collectively, 'Monsanto')." Tereniak Decl., Exhibit A.

Niagara's Response to Paragraph 16:

17. More specifically, Niagara advised that Monsanto Co., Pharmacia LLC f/k/a Monsanto Co., and Solutia, Inc. (collectively "Monsanto") were "demanding that Niagara Transformer defend, indemnify and hold harmless Monsanto in response to multiple actions filed against Monsanto in various jurisdictions around the country for personal injuries, water cleanup, and otherwise, arising out of the alleged use of Polychlorinated Biphenyls ('PCBs') manufactured by Monsanto." Tereniak Decl., Exhibit A.

Niagara's Response to Paragraph 17:

18. Although Niagara indicated that it had not been sued to its knowledge, it claimed that its litigation counsel "recently" learned of a 2017 lawsuit by Monsanto against another signatory of a Special Undertaking, and that it was "reasonable to assume" that Monsanto would sue Niagara and make similar allegations. Tereniak Decl., Exhibit A.

Niagara's Response to Paragraph 18:

19. In its notice letter Niagara concluded that "Monsanto's claims against Niagara Transformer, if proven, will cause loss or damage for which Admiral Insurance may be liable by virtue of the Policies" and, in light of this conclusion, it was providing notice to Admiral under the Admiral Policy. Tereniak Decl., Exhibit A.

Niagara's Response to Paragraph 19:

20. Finally, Niagara "demand[ed] that Admiral Insurance defend and indemnify Niagara Transformer in connection with any and all claims made by Monsanto." Tereniak Decl., Exhibit A.

Niagara's Response to Paragraph 20:

21. On March 27, 2020, Admiral wrote to Niagara to acknowledge receipt of the claim, to reserve rights, and to request further information to assist Admiral in its investigation. Tereniak Decl. ¶6 & Exhibit B.

Niagara's Response to Paragraph 21:

22. Niagara responded on April 14, 2020, by providing the correspondence described in the next section below, which included enclosures to Monsanto's August 29, 2016, letter consisting of a list of PCB-related actions against Monsanto and a copy of the Special Undertaking signed by Niagara. Tereniak Decl. ¶¶7-8 & Exhibits C-M.

Niagara's Response to Paragraph 22:

23. Attached to Mr. Klock's email was what he described as "all of the correspondence between Monsanto and Niagara Transformer." Tereniak Decl. ¶8 & Exhibit C.

Niagara's Response to Paragraph 23:

24. On April 21, 2020, Admiral denied coverage to Niagara under the Admiral Policy for the claims asserted by Monsanto based on several grounds, including Niagara's failure to provide timely notice of the claims. Tereniak Decl. ¶10 & Exhibit N.

Niagara's Response to Paragraph 24:

**MONSANTO'S CLAIMS AGAINST NIAGARA**

25. Monsanto first asserted claims against Niagara in an August 29, 2016, letter from Christopher M. Hohn of Thompson Coburn, LLP, counsel for Monsanto. Tereniak Decl., Exhibit K.

Niagara's Response to Paragraph 25:

26. Monsanto's August 29 letter demanded that Niagara defend, indemnify and hold harmless Pharmacia LLC f/k/a Monsanto Co. ("Old Monsanto") and related entities in connection with current and future polychlorinated biphenyl ("PCB")-related litigation against Old Monsanto, pursuant to a "Special Undertaking By Purchasers of Polychlorinated Biphenyls" (the "Special Undertaking") apparently signed by Niagara on or about January 7, 1972. Tereniak Decl., Exhibit K at 1-2.

Niagara's Response to Paragraph 26:

27. Monsanto grouped the cases against Monsanto into four categories: i) the "Food Chain Cases"; ii) the "Water Cases"; iii) the "School Cases"; and iv) the "Occupational Case". Tereniak Decl., Exhibit K at 2-3.

Niagara's Response to Paragraph 27:

28. Monsanto advised Niagara that settlement negotiations were underway in a number of cases and that a multi-million dollar judgment was entered against Monsanto in one of the Food Chain Cases on May 26, 2016. Tereniak Decl., Exhibit K at 3.

Niagara's Response to Paragraph 28:

29. Monsanto advised Niagara that the next Food Chain Case was scheduled for trial on September 12, 2016. Tereniak Decl., Exhibit K at 3.

Niagara's Response to Paragraph 29:

30. In addition, in the August 29, 2016, claim letter, Monsanto "request[ed] that you immediately notify your primary and excess insurer(s) of the demand for defense and indemnity set forth above." Tereniak Decl., Exhibit K at 3.

Niagara's Response to Paragraph 30:

31. Monsanto followed-up on its August 29, 2016, letter with a letter dated December 23, 2016, which Niagara received on December 28, 2016. Tereniak Decl., Exhibit J.

Niagara's Response to Paragraph 31:

32. In its December 23, 2016, letter Monsanto advised Niagara:

> Since putting Niagara on notice, Monsanto has incurred approximately $4.2 million in attorneys' fees defending the PCB litigation, and those fees continue to accrue. Monsanto also recently agreed to pay up to $280 million dollars to settle all of the pending PCB Food Chain Cases. Under the terms of the Special Undertaking Agreement and the governing law, each indemnitor, including Niagara, is jointly and severally liable to Monsanto for its cost of defending the PCB litigation, as well as amounts paid to resolve the Food Chain Cases. Prejudgment interest is currently accruing on amounts Niagara owes to Monsanto.

[Tereniak Decl., Exhibit J at 3.]

Niagara's Response to Paragraph 32:

33. Niagara, through counsel, responded to Monsanto's August 29, and December 23, 2016, letters by letter dated February 15, 2017, from Ryan K. Cummings Esq. of Hodgson Russ LLP to Mr. Hohn. Tereniak Decl., Exhibit I.

Niagara's Response to Paragraph 33:

34. In its February 15, 2017, letter, Niagara rejected Monsanto's tenders. Tereniak Decl., Exhibit I at 1, 4.

Niagara's Response to Paragraph 34:

35. In its February 15, 2017, letter Niagara took the position that: the indemnity provision in the Special Undertaking was void and unenforceable, including under New York law to the extent that it purported to provide indemnity for Monsanto's intentional, reckless and/or grossly negligent acts; that it was "unclear" that Niagara would owe any obligation under the

Special Undertaking to the entities making the tenders; and that the actions for which Monsanto sought defense and indemnity did not trigger the Special Undertaking. Tereniak Decl., Exhibit I at 1-2.

Niagara's Response to Paragraph 35:

36. By letter dated April 7, 2017, Monsanto wrote to Niagara to advise of an informational meeting that it was going to hold with numerous companies that signed a Special Undertaking for Monsanto. Tereniak Decl., Exhibit H.

Niagara's Response to Paragraph 36:

37. Monsanto further advised that based on its sales records, Niagara had purchased 1.6% of all PCB's sold by Monsanto after Niagara signed the Special Undertaking. Tereniak Decl., Exhibit H at 1-2.

Niagara's Response to Paragraph 37:

38. Using that percentage, Monsanto claimed that Niagara's share of the Food Chain Cases settlement would be $4,480,000, though noted that Niagara was jointly and severally liable for the full amount of the settlement. Tereniak Decl., Exhibit H at 2.

Niagara's Response to Paragraph 38:

39. On June 4, 2018, Monsanto tendered to Niagara five new lawsuits for defense and indemnification. Tereniak Decl., Exhibit G.

Niagara's Response to Paragraph 39:

40. By letter dated September 24, 2018, Niagara declined the tenders of the new suits identified in Monsanto's June 4, 2018, letter "[f]or the reasons discussed in [counsel's] February 15, 2017 correspondence". Tereniak Decl., Exhibit F.

Niagara's Response to Paragraph 40:

41. By letter dated March 26, 2019, Monsanto both responded to Niagara's February 15, 2017, rejection of Monsanto's tenders, and tendered new litigation against Monsanto for defense and indemnity pursuant to the Special Undertaking. Tereniak Decl., Exhibit E.

Niagara's Response to Paragraph 41:

42. By letter dated March 27, 2019, Niagara rejected the new tenders, again "[f]or the reasons discussed in [counsel's] February 15, 2017 correspondence".

Niagara's Response to Paragraph 42:

**The Declaratory Judgment Action**

43. On May 26, 2020, Admiral filed this action against Niagara seeking a declaration that Admiral has and had no duty to defend or indemnify Niagara in connection with claims asserted against Niagara by Monsanto based on the terms of the Admiral Policy. Kinney Decl., Exhibit A.

Niagara's Response to Paragraph 43:

44. In lieu of an answer Niagara requested permission to move to dismiss the complaint, which request was granted by Order dated July 14, 2020. Kinney Decl., Exhibit D.

Niagara's Response to Paragraph 44:

45. Admiral also requested permission to cross-move for summary judgment, which request was granted by Order dated July 22, 2020. Kinney Decl., Exhibit E.

Niagara's Response to Paragraph 45:

46. In the July 22, 2020, Order, the Court directed Admiral to file its motion on the same schedule as Niagara's Motion to Dismiss set forth in the Court's July 14, 2020, Order. Kinney Decl., Exhibit F.

Niagara's Response to Paragraph 46:

Dated: Parsippany, New Jersey
September 1, 2020

KINNEY LISOVICZ REILLY & WOLFF P.C.

By: /s/ Justin N. Kinney
Justin N. Kinney

11 Broadway, Suite 615
New York, New York 10004
(646) 741-7333

*Attorneys for Plaintiff Admiral Insurance Company*