## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>     Plaintiff,<br><br>v.<br><br>NIAGARA TRANSFORMER CORP.,<br><br>     Defendant. | Civil Action No. 1:20-cv-04041 (ALC)<br><br>**NIAGARA TRANSFORMER'S RESPONSE TO ADMIRAL INSURANCE COMPANY'S RULE 56 AND LOCAL CIVIL RULE 56.1 STATEMENT OF MATERIAL FACTS INCLUDING ADDITIONAL MATERIAL FACTS** |

Pursuant to the Federal Rules of Civil Procedure 56 and Local Civil Rule 56.1, Defendant Niagara Transformer Corp. ("Niagara Transformer") respectfully submits the following responses to the statement of material facts submitted by Plaintiff Admiral Insurance Company ("Admiral") in support of its motion for summary judgment.

## I.     RESPONSES TO PLAINTIFF'S CONTENTIONS

1.     Admiral is Delaware corporation with its principal place of business in Scottsdale, Arizona.  See Legal and Licensing Information Chart, attached as Exhibit B to the accompanying Declaration of Justin N. Kinney, Esq. in Support of Plaintiff's Motion for Summary Judgment ("Kinney Decl.")

**Niagara Transformer's Response to Paragraph 1**:

Admitted.

2.     At the time of the issuance of Admiral Policy number 6CG1839 (the "Admiral Policy") to Niagara Transformer Corp. ("Niagara"), Admiral was a Texas stock company.  See Admiral Policy Declarations, attached within Exhibit O at page ADM 000002 to the accompanying

Declaration of John M. Tereniak in Support of Plaintiff's Motion for Summary Judgment ("Tereniak Decl.").

**Niagara Transformer's Response to Paragraph 2**:

Admitted.

3.      Niagara has been a New York domestic business corporation since at least 1958. See Entity Information printout from the NYS Department of State, Kinney Decl., Exhibit C.

Niagara's Response to Paragraph 3:

Admitted.

4.      Niagara's principal place of business is located at 1755 Dale Road, Buffalo, New York.  See NYS Department of State Entity Information printout, Kinney Decl., Exhibit C.

**Niagara Transformer's Response to Paragraph 4**:

Admitted.

5.      At the time of the issuance of the Admiral Policy, Niagara's principal place of business was located at 1747 Dale Road, Cheektowaga, New York.  See Admiral Policy Declarations, Tereniak Decl., Exhibit O at ADM 000002; Products Liability Proposal, Tereniak Decl., Exhibit O at ADM 000020.

**Niagara Transformer's Response to Paragraph 5**:

Admitted.

6.      At the time of the issuance of the Admiral Policy, Niagara manufactured electrical equipment, specifically transformers, at the 1747 Dale Road location, and at a location at 1600 Seneca Street, Buffalo, New York.  See Products Liability Proposal, Tereniak Decl., Exhibit O at ADM 000020.

**Niagara Transformer's Response to Paragraph 6**:

Admitted.


**THE ADMIRAL POLICY**

7.      Admiral issued The Admiral Policy to Niagara as the Named Insured for the period July 30, 1976, to July 30, 1977.  See Tereniak Decl. ¶13 & Exhibit O at ADM 00002-00006; 00009.

**Niagara Transformers Response to Paragraph 7**:

Admitted.


8.      The Admiral Policy was underwritten on behalf of Admiral by Jersey/International, Inc., located at 56 Haddon Avenue in Haddonfield, New Jersey.  See Admiral Policy Folder, Tereniak Decl., Exhibit O & Exhibit O at ADM 000021.

**Niagara Transformer's Response to Paragraph 8**:

Admitted that is what Admiral's "Policy folder" appears to reflect.  Denied to the extent assertion is not supported by a citation to admissible evidence as required by Local Rule 56.1(d).

9.      The wholesale broker, and policy producer, was Wohlreich & Anderson, Ltd., which was located at 55 John Street, New York, New York.  See Admiral Policy Declarations, Tereniak Decl., Exhibit O at ADM 000002.

**Niagara Transformers Response to Paragraph 9**:

Admitted that is what Admiral's "Policy folder" appears to reflect.  Denied to the extent assertion is not supported by a citation to admissible evidence as required by Local Rule 56.1(d).

10.     Niagara's retail insurance broker for the Admiral Policy was Lawley Service, Inc., located at 1470 Statler Hilton Hotel, Buffalo, New York.  See Products Liability Proposal, Tereniak Decl., Exhibit O at ADM 000017-000020; Risk Submission – Supplemental Information, Exhibit O at ADM 000023; November 1, 1977, letter from Niagara to Lawley Service, Inc., Exhibit O at ADM 000045.

**Niagara Transformer's Response to Paragraph 10**:

Admitted that is what Admiral's "Policy folder" appears to reflect.  Denied to the extent assertion is not supported by a citation to admissible evidence as required by Local Rule 56.1(d).

11.     The Admiral Policy provides completed operations and products liability insurance with limits of $300,000.00 each occurrence and in the aggregate for bodily injury liability and $50,000 each occurrence and in the aggregate for property damage liability, subject to a $2,500 per claim deductible for both coverages combined.  Admiral Declarations, Tereniak Decl., Exhibit O at ADM 000002; Endorsement No. 1, Exhibit O at ADM 000005.

209fcd

**<u>Niagara Transformer's Response to Paragraph 11</u>**:

Admitted that is what Admiral's "Policy folder" appears to reflect.  Denied to the extent

assertion is not supported by a citation to admissible evidence as required by Local Rule 56.1(d).


12.     The Schedule of General Liability Hazards in the Declarations of the Admiral

Policy identifies a single products classification for "Electrical Equipment (mfg.)".   Admiral

Policy Additional Declarations, Tereniak Decl., Exhibit O at ADM 000003.

**<u>Niagara Transformer's Response to Paragraph 12</u>**:

Admitted that is what Admiral's "Policy folder" appears to reflect.  Denied to the extent

assertion is not supported by a citation to admissible evidence as required by Local Rule 56.1(d).


13.     The Insuring Agreement of the Admiral Policy provides as follows:
   **I.     COVERAGE A – BODILY INJURY LIABILITY
           COVERAGE B – PROPERTY DAMAGE LIABILITY**

   ADMIRAL will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

   A.     bodily injury or        B.     property damage

   to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the products hazard, and ADMIRAL shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but ADMIRAL shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of ADMIRAL's liability has been exhausted by payment of judgments or settlements.
   [Completed Operations and Products Liability Coverage Part, Tereniak Decl., Exhibit O at ADM 000003-000004; Tereniak Decl. ¶¶20-21 & Exhibit P.]

**<u>Niagara Transformer's Response to Paragraph 13</u>**:

Denied.  The purported copy of the "insuring Agreement" cited by Admiral in support is illegible.  <u>See</u> Tereniak Decl. at Exhibit D, ADM000004.  Admiral admits the "coverage form" it relies upon "could not have been used in the Admiral Policy."  Tereniak Decl. at ¶21 and Exh. P.

14.     The Admiral Policy includes the following Notice provision:

**4.  Insured's Duties in the Event of Occurrence, Claim or Suit**

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to ADMIRAL'S authorized representative as soon as practicable.

(b) If claim is made or suit is brought against the Insured, the Insured shall immediately forward to ADMIRAL's authorized representative every demand, notice, summons or other process received by him or his representative.

(c) The Insured shall cooperate with ADMIRAL and, upon ADMIRAL's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the Insured because of injury or damage with respect to which insurance is afforded under this policy; and the Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

[Tereniak Decl. ¶¶22-26 & Exhs. Q at 3; R at 3.]

**Niagara Transformer's Response to Paragraph 14**:

Denied.  Admiral admits that it does not know "definitively" the "policy jacket included with the Admiral Policy."  Tereniak Decl. at ¶23.  Admiral offers no basis for its assumption that the Admiral Policy included any notice provision incorporated by reference in a "policy jacket." The Declarations page of the Admiral Policy states plainly that such a notice provision may not have been included, to wit:   "This Declarations and Coverage Part(s), with Policy Standard Provisions and Endorsements, if any, issued to form part thereof, completes the above numbered policy."  See Darby Aff. at Exhibit K.  The cited notice provision was, according to Admiral, in a form "policy jacket" that "most likely was the policy jacket used with the Admiral Policy."  Id. at ¶25.  However, the "Admiral Policy folder" pulled from Admiral's records does not include a "policy jacket" resembling the form "policy jacket" Admiral cites as "most likely" "used with the Admiral Policy."  Id. at ¶¶22-26; compare Tereniak Decl. at Exhibit O with Exhibits Q and R. Accordingly, Admiral has failed to establish through admissible evidence, (i) that the Admiral Policy included the Notice Provision set forth at paragraph 14 (the "Notice Provision"); (ii) that the Admiral Policy included any terms requiring Niagara Transformer to provide notice to Admiral within a certain time frame; (iii) the circumstances under which Niagara Transformer was required to provide such notice; and (iv) what time frame would apply.

## NIAGARA'S COVERAGE CLAIM AND ADMIRAL'S RESPONSE

15.     Niagara presented its claim for coverage to Admiral more than three and half years after Monsanto asserted the claims and a year after Monsanto's last tender, by letter dated March 11, 2020, which was received by Admiral on March 23, 2020.  Tereniak Decl. ¶5 & Exhibit A.

**<u>Niagara Transformer's Response to Paragraph 15</u>**:

Denied.   The phrase "after Monsanto asserted the claims" is ambiguous.   Niagara Transformer admits it served its Notice of Claim upon Admiral more than three-and-a-half years after receiving Monsanto's initial demand for defense and indemnification under the Special Undertaking.   Monsanto's last tender was dated October 14, 2019, approximately six (6) months prior to Niagara Transformer's Notice of Claim to Admiral.   Darby Aff. at ¶16.

16.     In its notice letter, Niagara advised that it had been "served with certain demands for defense and indemnification by Monsanto Company, Pharmacia LLC, f/k/a Monsanto, and Solutia, Inc. (collectively, 'Monsanto')."   Tereniak Decl., Exhibit A.

**<u>Niagara Transformer's Response to Paragraph 16</u>**:

Admitted and Niagara Transformer refers to the entire Notice of Claim for its full and complete terms in context.

17.     More specifically, Niagara advised that Monsanto Co., Pharmacia LLC f/k/a Monsanto Co., and Solutia, Inc. (collectively "Monsanto") were "demanding that Niagara Transformer defend, indemnify and hold harmless Monsanto in response to multiple actions filed against Monsanto in various jurisdictions around the country for personal injuries, water cleanup, and otherwise, arising out of the alleged use of Polychlorinated Biphenyls ('PCBs') manufactured by Monsanto."   Tereniak Decl., Exhibit A.

**<u>Niagara Transformer's Response to Paragraph 17</u>**:

Admitted and Niagara Transformer refers to the entire Notice of Claim for its full and complete terms in context.

18.     Although Niagara indicated that it had not been sued to its knowledge, it claimed that its litigation counsel "recently" learned of a 2017 lawsuit by Monsanto against another signatory of a Special Undertaking, and that it was "reasonable to assume" that Monsanto would sue Niagara and make similar allegations. Tereniak Decl., Exhibit A.

**Niagara Transformer's Response to Paragraph 18**:

Admitted and Niagara Transformer refers to the entire Notice of Claim for its full and complete terms in context.

19.     In its notice letter Niagara concluded that "Monsanto's claims against Niagara Transformer, if proven, will cause loss or damage for which Admiral Insurance may be liable by virtue of the Policies" and, in light of this conclusion, it was providing notice to Admiral under the Admiral Policy.  Tereniak Decl., Exhibit A.

**Niagara Transformer's Response to Paragraph 19**:

Admitted and Niagara Transformer refers to the entire Notice of Claim for its full and complete terms in context.

20.     Finally, Niagara "demand[ed] that Admiral Insurance defend and indemnify Niagara Transformer in connection with any and all claims made by Monsanto."  Tereniak Decl., Exhibit A.

**Niagara Transformer's Response to Paragraph 20**:

Admitted and Niagara Transformer refers to the entire Notice of Claim for its full and complete terms in context.

21.     On March 27, 2020, Admiral wrote to Niagara to acknowledge receipt of the claim, to reserve rights, and to request further information to assist Admiral in its investigation.  Tereniak Decl. ¶6 & Exhibit B.

**Niagara Transformer's Response to Paragraph 21**:

Admitted.


22.     Niagara responded on April 14, 2020, by providing the correspondence described in the next section below, which included enclosures to Monsanto's August 29, 2016, letter consisting of a list of PCB-related actions against Monsanto and a copy of the Special Undertaking signed by Niagara.  Tereniak Decl. ¶¶7-8 & Exhibits C-M.

**Niagara Transformer's Response to Paragraph 22**:

Admitted.


23.     Attached to Mr. Klock's email was what he described as "all of the correspondence between Monsanto and Niagara Transformer."  Tereniak Decl. ¶8 & Exhibit C.

**Niagara Transformer's Response to Paragraph 23:**

Admitted and Niagara Transformer refers to Mr. Klock's email for its full and complete terms in context.


24.     On April 21, 2020, Admiral denied coverage to Niagara under the Admiral Policy for the claims asserted by Monsanto based on several grounds, including Niagara's failure to provide timely notice of the claims.  Tereniak Decl. ¶10 & Exhibit N.

**Niagara Transformer's Response to Paragraph 24**:

Admitted and Niagara Transformer refers to Admiral's disclaimer letter for its full and complete terns in context.


**MONSANTO'S CLAIMS AGAINST NIAGARA**

25.     Monsanto first asserted claims against Niagara in an August 29, 2016, letter from Christopher M. Hohn of Thompson Coburn, LLP, counsel for Monsanto.  Tereniak Decl., Exhibit K.

**Niagara Transformer's Response to Paragraph 25**:

Denied.  The phrase "asserted claims against Niagara" is ambiguous.  Niagara Transformer admits it received the demand from Monsanto's counsel dated August 29, 2016 on or about that date (the "Monsanto Demand"), and Niagara Transformer refers to the Monsanto Demand for its full and complete terms in context.


26.     Monsanto's August 29 letter demanded that Niagara defend, indemnify and hold harmless Pharmacia LLC f/k/a Monsanto Co. ("Old Monsanto") and related entities in connection with current and future polychlorinated biphenyl ("PCB")-related litigation against Old Monsanto, pursuant to a "Special Undertaking By Purchasers of Polychlorinated Biphenyls" (the "Special Undertaking") apparently signed by Niagara on or about January 7, 1972.  Tereniak Decl., Exhibit K at 1-2.

**Niagara Transformer's Response to Paragraph 26**:

Admitted and Niagara Transformer refers to the entire Monsanto Demand for its full and complete terms in context.

27.     Monsanto grouped the cases against Monsanto into four categories: i) the "Food Chain Cases"; ii) the "Water Cases"; iii) the "School Cases"; and iv) the "Occupational Case". Tereniak Decl., Exhibit K at 2-3.

**Niagara Transformer's Response to Paragraph 27**:

Admitted and Niagara Transformer refers to the entire Monsanto Demand for its full and complete terms in context.

28.     Monsanto advised Niagara that settlement negotiations were underway in a number of cases and that a multi-million dollar judgment was entered against Monsanto in one of the Food Chain Cases on May 26, 2016.  Tereniak Decl., Exhibit K at 3.

**Niagara Transformer's Response to Paragraph 28**:

Admitted and Niagara Transformer refers to the entire Monsanto Demand for its full and complete terms in context.

29.     Monsanto advised Niagara that the next Food Chain Case was scheduled for trial on September 12, 2016.  Tereniak Decl., Exhibit K at 3.

**Niagara Transformer's Response to Paragraph 29**:

Admitted and Niagara Transformer refers to the entire Monsanto Demand for its full and complete terms in context.

30.     In addition, in the August 29, 2016, claim letter, Monsanto "request[ed] that you immediately notify your primary and excess insurer(s) of the demand for defense and indemnity set forth above."  Tereniak Decl., Exhibit K at 3.

**<u>Niagara Transformer's Response to Paragraph 30</u>**:

Admitted and Niagara Transformer refers to the entire Monsanto Demand for its full and complete terms in context.

31.     Monsanto followed-up on its August 29, 2016, letter with a letter dated December 23, 2016, which Niagara received on December 28, 2016.  Tereniak Decl., Exhibit J.

**<u>Niagara Transformer's Response to Paragraph 31</u>**:

Admitted and Niagara Transformer refers to the entire letter dated December 23, 2016 for its full and complete terms in context.

32.     In its December 23, 2016, letter Monsanto advised Niagara:

> Since putting Niagara on notice, Monsanto has incurred approximately $4.2 million in attorneys' fees defending the PCB litigation, and those fees continue to accrue.  Monsanto also recently agreed to pay up to $280 million dollars to settle all of the pending PCB Food Chain Cases.  Under the terms of the Special Undertaking Agreement and the governing law, each indemnitor, including Niagara, is jointly and severally liable to Monsanto for its cost of defending the PCB litigation, as well as amounts paid to resolve the Food Chain Cases.  Prejudgment interest is currently accruing on amounts Niagara owes to Monsanto.

[Tereniak Decl., Exhibit J at 3.]

**<u>Niagara Transformer's Response to Paragraph 32</u>**:

Admitted and Niagara Transformer refers to the entire letter dated December 23, 2016 for its full and complete terms in context.

209fcd5996523098

33.     Niagara, through counsel, responded to Monsanto's August 29, and December 23, 2016, letters by letter dated February 15, 2017, from Ryan K. Cummings Esq. of Hodgson Russ LLP to Mr. Hohn.  Tereniak Decl., Exhibit I.

**Niagara Transformer's Response to Paragraph 33**:

Admitted and Niagara Transformer refers to the entire letter dated February 15, 2017 for its full and complete terms and conditions.


34.     In its February 15, 2017, letter, Niagara rejected Monsanto's tenders.  Tereniak Decl., Exhibit I at 1, 4.

**Niagara Transformer's Response to Paragraph 34**:

Admitted and Niagara Transformer refers to the entire letter dated February 15, 2017 for its full and complete terms and conditions.


35.     In its February 15, 2017, letter Niagara took the position that: the indemnity provision in the Special Undertaking was void and unenforceable, including under New York law to the extent that it purported to provide indemnity for Monsanto's intentional, reckless and/or grossly negligent acts; that it was "unclear" that Niagara would owe any obligation under the Special Undertaking to the entities making the tenders; and that the actions for which Monsanto sought defense and indemnity did not trigger the Special Undertaking.  Tereniak Decl., Exhibit I at 1-2.

**Niagara Transformer's Response to Paragraph 35**:

Admitted and denied.  Admitted to the extent Admiral's foregoing statement No. 35 captures some of the reasons Niagara Transformer reached its conclusion that it did not have any

liability to Monsanto.  Denied to the extent the foregoing statement suggests Niagara Transformer was merely "taking a position" rather than having reached a reasonable conclusion of non-liability. Moreover, denied because the foregoing statement is an incomplete recitation of the reasons why Niagara Transformer reached its conclusion.  Additional reasons, set forth in the February 15, 2017 letter but apparently missing from Admiral's statement No. 35, include:  extinguishment of Monsanto's rights, if any, in a related bankruptcy proceeding; the underlying complaints, for temporal reasons, did not trigger the Special Undertaking; and "none of the [underlying third-party complaints identify Niagara Transformer's products as being the source of the alleged contamination."  See Darby Aff. at Exhibit D, pg. 3.

The last reason is particularly noteworthy in this context because Admiral purported to deny Niagara Transformer's claim, in part, based on Admiral's contention that "the PCB Litigation does not involve any operations or products of [Niagara Transformer]."  Admiral's disclaimer letter dated April 21, 2020, attached as Exhibit N to Tereniak Decl. at pg. 8.  Moreover, Admiral's Complaint, at the Second Cause, seeks a declaratory judgment of non-coverage because the "PCB litigation instituted against Monsanto for which it has sought defense and indemnification from Niagara pursuant to the Special Undertaking, does not involve any operations or products of Niagara."  Id. at ¶26.  In any event, Niagara Transformer refers to the entire February 15, 2017 letter for its full and complete terms in context.

36.     By letter dated April 7, 2017, Monsanto wrote to Niagara to advise of an informational meeting that it was going to hold with numerous companies that signed a Special Undertaking for Monsanto.  Tereniak Decl., Exhibit H.

**Niagara Transformer's Response to Paragraph 36**:

Admitted and Niagara Transformer refers to the entire April 7, 2017 letter for its full and complete terms in context.

37.     Monsanto further advised that based on its sales records, Niagara had purchased 1.6% of all PCB's sold by Monsanto after Niagara signed the Special Undertaking.  Tereniak Decl., Exhibit H at 1-2.

**Niagara Transformer's Response to Paragraph 37**:

Admitted and Niagara Transformer refers to the entire April 7, 2017 letter for its full and complete terms in context.

38.     Using that percentage, Monsanto claimed that Niagara's share of the Food Chain Cases settlement would be $4,480,000, though noted that Niagara was jointly and severally liable for the full amount of the settlement.  Tereniak Decl., Exhibit H at 2.

**Niagara Transformer's Response to Paragraph 38**:

Admitted and Niagara Transformer refers to the entire April 7, 2017 letter for its full and complete terms in context.

39.     On June 4, 2018, Monsanto tendered to Niagara five new lawsuits for defense and indemnification.  Tereniak Decl., Exhibit G.

**Niagara Transformer's Response to Paragraph 39**:

Admitted and Niagara Transformer refers to the entire June 4, 2018 letter for its full and complete terms in context.

40.     By letter dated September 24, 2018, Niagara declined the tenders of the new suits identified in Monsanto's June 4, 2018, letter "[f]or the reasons discussed in [counsel's] February 15, 2017 correspondence".  Tereniak Decl., Exhibit F.

**Niagara Transformer's Response to Paragraph 40**:

Admitted and Niagara Transformer refers to the entire September 24, 2018 letter for its full and complete terms in context.

41.     By letter dated March 26, 2019, Monsanto both responded to Niagara's February 15, 2017, rejection of Monsanto's tenders, and tendered new litigation against Monsanto for defense and indemnity pursuant to the Special Undertaking.  Tereniak Decl., Exhibit E.

**Niagara Transformer's Response to Paragraph 41**:

Admitted and Niagara Transformer refers to the entire March 26, 2019 letter for its full and complete terms in context.

42.     By letter dated March 27, 2019, Niagara rejected the new tenders, again "[f]or the reasons discussed in [counsel's] February 15, 2017 correspondence".

**Niagara Transformer's Response to Paragraph 42**:

Admitted and Niagara Transformer refers to the entire March 27, 2019 letter for its full and complete terms in context.

**The Declaratory Judgment Action**

43.     On May 26, 2020, Admiral filed this action against Niagara seeking a declaration that Admiral has and had no duty to defend or indemnify Niagara in connection with claims

asserted against Niagara by Monsanto based on the terms of the Admiral Policy.  Kinney Decl.,
Exhibit A.

**Niagara Transformer's Response to Paragraph 43**:

Admitted.


44.    In lieu of an answer Niagara requested permission to move to dismiss the
complaint, which request was granted by Order dated July 14, 2020.  Kinney Decl., Exhibit D.

**Niagara Transformer's Response to Paragraph 44**:

Admitted.


45.    Admiral also requested permission to cross-move for summary judgment, which
request was granted by Order dated July 22, 2020.  Kinney Decl., Exhibit E.

**Niagara Transformer's Response to Paragraph 45**:

Admitted.

46.    In the July 22, 2020, Order, the Court directed Admiral to file its motion on the
same schedule as Niagara's Motion to Dismiss set forth in the Court's July 14, 2020, Order.
Kinney Decl., Exhibit F.

**Niagara Transformer's Response to Paragraph 46**:

Admitted.


## II.    ADDITIONAL FACTUAL ASSERTIONS BY DEFENDANT

47.    Niagara Transformer, after a reasonable search, has not located a copy of the
Admiral Policy.  See Darby Aff. at ¶14 and ¶20.

48.     Niagara Transformer, after a reasonable search conducted in August/September 2016 in response to Monsanto's initial tender, was initially unaware that it had insurance with Admiral.  See Darby Aff. at ¶14.

49.     Niagara Transformer only discovered it had an insurance policy with Admiral in or about March 2020.  See Darby Aff. at ¶20.

50.     Admiral admits it issued Admiral Policy number 6CG1839 to Niagara Transformer.  See Tereniak Decl. at ¶13.

51.     Admiral has failed to establish through admissible evidence that the Admiral Policy included the Notice Provision.  See Tereniak Decl. at ¶15-26.

52.     Admiral has failed to establish through admissible evidence the circumstances under which Niagara Transformer is obligated to provide notice to Admiral.  Id.

53.     Admiral has failed to establish through admissible evidence the date when Niagara Transformer was obligated to provide notice to Admiral.  Id.

54.     Niagara Transformer's belief that it had no liability to Monsanto was based, in part, on the fact that the underlying PCB actions against Monsanto did not involve any operations or products of Niagara Transformer.  See Darby Aff. at ¶11 and Exhibit D at pg. 3 ("None of the complaints identify Niagara Transformer's product as being the source of the alleged contamination. . ..").

55.     Admiral purported to deny the claim of Niagara Transformer, in part, based on the fact that the underlying PCB actions against Monsanto "did not involve any operations or products of [Niagara Transformer]."  Tereniak Decl. at Exhibit N, at 8.

56.     Niagara Transformer's belief that there was no insurance coverage available covering Monsanto's demand was based, in part, on the fact that the underlying PCB actions

against Monsanto "did not involve any operations or products of Niagara Transformer." <u>See</u> Darby Aff. at ¶¶14-16.

57.     The Second Cause of Admiral's Complaint seeks a declaratory judgment that Admiral has no obligation to defend or indemnify Niagara Transformer based on the fact that the "PCB Litigation instituted against Monsanto . . . does not involve any operations or products of Niagara." <u>Id.</u> at ¶26.

58.     Other reasons for Niagara Transformer's belief that it was not required to provide defense and indemnification to Monsanto included, (i) Monsanto's fraudulent conduct, including hiding the extent of the deleterious effects of Monsanto's PCBs on humans, animals, and the environment; (ii) the unenforceability of the Special Undertaking because Monsanto was seeking indemnification for its own intentional, reckless, and/or grossly negligent acts, and the language of the Special Undertaking did not cover Monsanto's forgoing acts; (iii) extinguishment of Monsanto's rights, if any, in a related bankruptcy proceeding; (iv) the underlying complaints, for temporal reasons, did not trigger the Special Undertaking; and (v) that Niagara Transformer was not named as a defendant in any of the underlying actions against Monsanto.

59.     Admiral stated in its coverage denial letter dated April 21, 2020, <u>inter alia</u>, that "it is not clear that Monsanto's demands seek to impose liability on [Niagara Transformer] for damages because of bodily injury or property damage caused by an occurrence within the meaning of the Admiral Policy." <u>Id.</u>

60.     In the 1970s, Monsanto required Niagara Transformer to purchase insurance coverage deemed acceptable to Monsanto as a condition to selling Niagara Transformer Askeral, at the time an essential component in manufacturing the company's transformers.  <u>See</u> Darby Aff. at ¶4.

61.     Upon information and belief, the Admiral Policy was purchased, at least in part, to satisfy Monsanto's foregoing condition.  See Darby Aff. at ¶6.

62.     Niagara Transformer rejected all of Monsanto's tenders based on the Special Undertaking.  See Darby Aff. at ¶11; ¶¶15-16.

63.     Monsanto has never expressly threatened to file suit against Niagara Transformer to enforce the Special Undertaking or otherwise.  Id. at ¶13; ¶17.

64.     The last demand and tender received by Niagara transformer from Monsanto is dated October 14, 2019.  Id. at ¶16.

65.     Monsanto has not filed suit against Niagara Transformer to enforce the Special Undertaking or otherwise.  Id. at ¶18.

66.     In or about March 2020, Niagara Transformer became aware of an action filed by Monsanto against an unrelated company, Magnetek, Inc.  (the "Magnetek Action"").  See Darby Aff. at ¶19; see also Honecker Decl. at Exhibit A.

67.     Magnetek, Inc. ("Magnetek") was in a similar position as Niagara Transformer in that Magnetek has executed its own Special Undertaking with Monsanto.  See Darby Aff. at ¶19.

68.     In the Magnetek Action, Monsanto made allegations of negligence against Magnetek.  Id.

69.     In or about March 2020, Niagara Transformer learned that Magnetek, based on Monsanto's allegations in the Magnetek Action, had obtained insurance coverage.  Id.

70.     In June 2020, Niagara transformer became aware through press reports that a successor company to Monsanto settled certain "water cases" without consultation with Niagara Transformer, and without Niagara transformer having altered in any way its rejection of Monsanto's tender for defense and indemnification under the Special Undertaking.  Id.

Dated: New York, New York     **WINDELS MARX LANE & MITTENDORF, LLP**
       September 15, 2020

By:     */s/ Rodman E. Honecker*
       Rodman E. Honecker

       156 West 56th Street
       New York, New York 10019
       (212) 237-1025
       rhonecker@windelsmarx.com
       *Attorneys for Defendant*
        *Niagara Transformer Corp.*
       New York, New York 10004
       (646) 741-7333